STATE OF NORTH CAROLINA v. WADE LARRY COLE

No. 324A94

(Filed 13 June 1996)

1. **Constitutional Law § 287 (NCI4th)— capital murder— motion of counsel to withdraw—denied—no denial of Sixth Amendment rights**

The trial court did not err in a first-degree murder prosecution by not allowing trial counsel to withdraw where the attorneys who had represented defendant in his first trial were appointed for the retrial; counsel described in their withdrawal motion disputes with defendant; defendant had accused them of conspiring with prosecutors, alleged that they wanted to see him executed, and alleged that exhibits had been altered; defendant had become violent during their last conference, tearing pages from a tablet, ordering them from the room, and threatening to fight them; and counsel added at the hearing that defendant was not cooperative, that he had lost all confidence in them and did not believe that they had his best interest at heart, and that two other attorneys had agreed to serve as counsel. A review of the transcript and record of the trial reveals that defense counsel zealously represented their client and that any disputes were resolved before trial, and there is no indication that defendant's outburst a week prior to his trial adversely affected the representation of defendant by his attorneys at trial. Defendant's Sixth Amendment guarantee of effective assistance of counsel was not violated.

Am Jur 2d, Attorneys at Law §§ 168, 173-175; Criminal Law §§ 984-987.

Attorney's refusal to accept appointment to defend indigent, or to proceed in such defense, as contempt. 36 ALR3d 1221.

Indigent accused's right to choose particular counsel appointed to assist him. 66 ALR3d 996.

Power of court to change counsel appointed for indigent, against objections of accused and original counsel. 3 ALR4th 1227.

STATE v. COLE

[343 N.C. 399 (1996)]

## 2. Criminal Law § 78 (NCI4th)— capital murder—retrial— motion for change of venue—pretrial publicity

The trial court did not abuse its discretion in a retrial for first-degree murder by denying defendant's pretrial motion for a change of venue where defendant argued he could not receive a fair trial because the county was small and publicity for the first trial had been intense, adding that it would be difficult to select a jury with black members because so many of the potential black jurors in the county knew the victims. Defendant's evidence consisted of newspaper articles on the first trial, which were essentially factual and were published almost four years prior to the retrial. Defendant also presented evidence that there were approximately 1,600 potential jurors left for the venire in his retrial, certainly a sufficient number from which to select an impartial jury of twelve.

**Am Jur 2d, Criminal Law §§ 372-397; Venue §§ 48 et seq.**

**Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.**

**Choice of venue to which transfer is to be had, where change is sought because of local prejudice. 50 ALR3d 760.**

## 3. Constitutional Law § 338 (NCI4th)— capital murder—no black jurors—Sixth Amendment challenge—fair cross section—no mistrial

The trial court did not abuse its discretion by denying defendant's motions for a mistrial and change of venue in a first-degree murder retrial where no black jurors had been seated at the time the motion was made. Defendant does not allege and the evidence does not show a *Batson* violation and there was no indication that any potential juror was struck peremptorily on the basis of race or that any blacks were excluded from the jury venire; black persons were excluded from the jury for a variety of reasons ranging from health problems to views on the death penalty. Defendant essentially argues that he is entitled to have persons of his race serve on the jury that tries him, which may be a desirable goal, but is not required; what the law requires is that there be no systematic exclusion of certain constitutionally cognizable groups from the venire and that no potential juror be excluded from the petit jury on account of race or gender. Defendant here

has not shown that he did not receive the treatment that the law requires.

**Am Jur 2d, Jury §§ 7, 131-139, 156.**

**Use of peremptory challenges to exclude ethnic and racial groups, other than black Americans, from criminal jury—post-*Batson* state cases. 20 ALR5th 398.**

**Supreme Court's views as to use of peremptory challenges to exclude from jury persons belonging to same race as criminal defendant. 90 L. Ed. 2d 1078.**

4. **Jury 203 (NCI4th)— capital murder—juror initially expressing bias against defendant—rehabilitated by judge**

The trial court did not abuse its discretion in a first-degree murder retrial by refusing to excuse a juror who expressed bias against defendant where the juror first responded that he thought defendant was guilty but unambiguously responded after being questioned by the judge that he could put aside his knowledge of the case, that his knowledge of the case would not affect his ability to render a fair and impartial verdict, and that he could base his verdict on the evidence presented at trial.

**Am Jur 2d, Jury §§ 266, 267, 289-292.**

**Bias, prejudice, or conduct of individual member or members of jury panel as ground for challenge to array or to entire panel. 76 ALR2d 678.**

5. **Homicide § 333 (NCI4th)— involuntary manslaughter— stabbing—foreseeability**

The trial court did not err in a retrial for first-degree murder and manslaughter by denying defendant's motion to dismiss the charge of involuntary manslaughter. It was not necessary that defendant foresee that the victim would die from the assault, just that he foresee that some serious injury might result, and the evidence shows that the victim was a fifty-seven year-old woman and that defendant was well aware of her state of health. It is reasonable that defendant would have foreseen that two stab wounds to a woman of her age and health would be injurious to her.

**Am Jur 2d, Homicide §§ 474, 496; Trial §§ 1077-1079, 1093, 1121, 1123.**

STATE v. COLE

[343 N.C. 399 (1996)]

Necessity that trial court charge upon motive in homicide case. 71 ALR2d 1025.

Propriety of manslaughter conviction in prosecution for murder, absent proof of necessary elements of manslaughter. 19 ALR4th 861.

6. **Evidence and Witnesses § 2182 (NCI4th)— capital murder—defense expert—range of possible blood alcohol level—excluded**

The trial court did not err in a first-degree murder retrial by prohibiting a defense expert from testifying about the range of defendant's possible blood-alcohol level at the time of the alleged offense where the expert testified that he based his estimate on information received from defendant and standard considerations such as defendant's weight, but defendant testified that he did not know the quantity of liquor he consumed or the percentage of alcohol in the liquor, there was uncertainty concerning defendant's actual weight at the time of the homicides, and the expert used the average rate of metabolism in his calculations rather than defendant's actual rate, but admitted during *voir dire* that the rate of metabolism might vary considerably among individuals. There was an inadequate basis for the opinion.

Am Jur 2d, Expert and Opinion Evidence §§ 6, 32-36, 214-216, 228-232.

Qualification as expert to testify as to findings or results of scientific test to determine alcoholic content of blood. 77 ALR2d 971.

7. **Criminal Law § 460 (NCI4th)— capital murder—closing argument—speculation on defendant's blood alcohol level—no gross impropriety**

There was no gross impropriety in the prosecutor's closing argument in a first-degree murder retrial requiring intervention *ex mero motu* where the court had excluded expert testimony regarding the range of defendant's blood alcohol level and the prosecutor speculated as to defendant's blood alcohol level.

Am Jur 2d, Trial §§ 533, 534, 555, 564, 615.

**8. Criminal Law § 441 (NCI4th)— capital murder—prosecutor's argument—credibility of witness**

The trial court did not err in a first-degree murder retrial by not intervening *ex mero motu* in a portion of the prosecutor's closing argument in which it was argued that the jury should not credit an expert's testimony.

**Am Jur 2d, Trial §§ 544, 555, 695.**

**9. Evidence and Witnesses § 668 (NCI4th)— capital murder—cross-examination—no plain error**

There was no plain error in a first-degree murder retrial in allowing the State to elicit testimony on cross-examination that one of defendant's character witnesses, a police captain, knew defendant's brother because he had arrested him on a number of occasions.

**Am Jur 2d, Witnesses §§ 811-823.**

**Cross-examination by leading questions of witness friendly to or biased in favor of cross-examiner. 38 ALR2d 952.**

**Use of unrelated misdemeanor conviction (other than for traffic offense) to impeach general credibility of witness in state civil case. 97 ALR3d 1150.**

**10. Criminal Law § 1339 (NCI4th)— capital sentencing—aggravating circumstance—course of conduct**

The trial court did not err in a first-degree murder retrial by submitting as an aggravating circumstance that the murder was part of a violent course of conduct that included defendant's commission of another crime of violence against another person where there was sufficient evidence of the other crime of violence, involuntary manslaughter with regard to the murder victim's mother, and the evidence showed a violent course of conduct in that the manslaughter victim was stabbed when she attempted to intervene while defendant was stabbing her daughter. The stabbings were very close in time and defendant used the same *modus operandi* in that he stabbed them both with a knife.

**Am Jur 2d, Criminal Law §§ 598, 599, 609, 627, 628.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that in**

committing murder, defendant created risk of death or injury to more than one person, to many persons, and the like—post-*Gregg* cases. 64 ALR4th 837.

Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.

Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.

11. **Criminal Law § 1339 (NCI4th)— capital sentencing—aggravating circumstances—course of conduct—instructions**

Instructions in a capital murder prosecution defining the aggravating circumstance that the murder was part of a course of conduct involving commission of a crime of violence against another person were not unconstitutionally vague.

**Am Jur 2d, Criminal Law §§ 598, 599, 609.**

Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that in committing murder, defendant created risk of death or injury to more than one person, to many persons, and the like—post-*Gregg* cases. 64 ALR4th 837.

Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.

12. **Criminal Law § 680 (NCI4th)— capital sentencing—peremptory instruction not given—defendant's good character**

The trial court did not err in a first-degree murder retrial where defendant contended that the court erred by not giving a peremptory instruction on the nonstatutory mitigating circum-

STATE v. COLE

[343 N.C. 399 (1996)]

stance that defendant is a person of good character in the community in which he lives because the court gave the instruction after initially declining. Although defendant contends that the use of the word "and" rather than "as" in the phrase "...if...you find the facts to be and all the evidence tends to show..." increased his burden of persuasion and was not a peremptory instruction, the use of "and" was a *lapsus linguae* and did not have a prejudicial effect on defendant.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial § 1350.**

**13. Criminal Law §§ 1320, 1360 (NCI4th)— capital sentencing—mitigating circumstances—only some evidence mentioned**

There was no error in a first-degree murder retrial where defendant contended that the trial court erred by limiting the causes of the mitigating circumstance of impaired capacity to certain specified causes that omitted other causes supported by the uncontradicted evidence. A trial judge's mention of only some of the evidence supporting a mitigating circumstance does not preclude jurors from considering other evidence that might support such a circumstance.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 1279, 1280.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**14. Criminal Law § 1343 (NCI4th)— capital sentencing—especially heinous, atrocious, or cruel—not unconstitutionally vague**

The jury's determination in a first-degree murder retrial that the murder was especially heinous, atrocious, or cruel was not based on unconstitutionally vague instructions.

**Am Jur 2d, Criminal Law §§ 609, 627, 628; Trial §§ 1124, 1138.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**15. Criminal Law § 1351 (NCI4th)— capital sentencing— mitigating circumstance—burden of proof—not unconstitutional**

The trial court's instructions in a first-degree murder retrial defining the burden of proof applicable to mitigating circumstances did not violate the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 1184, 1202, 1289-1292.**

**16. Criminal Law § 1363 (NCI4th)— capital sentencing—mitigating circumstances—value**

The trial court in a first-degree murder retrial did not violate the Eighth and Fourteenth Amendments to the United States Constitution by allowing the jury to refuse to give effect to mitigating evidence if the jury deemed it did not have mitigating value.

**Am Jur 2d, Trial §§ 1759, 1760.**

**17. Criminal Law § 1363 (NCI4th)— capital sentencing—mitigating circumstances—value**

The trial court did not err in a first-degree murder retrial by allowing jurors not to give effect to mitigating circumstances found by the jurors.

**Am Jur 2d, Trial §§ 1759, 1760.**

**18. Criminal Law § 1373 (NCI4th)— death sentence—not disproportionate**

A death sentence in a first-degree murder retrial was not disproportionate where the record fully supports the two aggravating circumstances found by the jury, there is no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration, this case is not substantially similar to any of the cases in which the death penalty was found disproportionate, and this case is similar to certain cases in which the death sentence was found proportionate. North Carolina has never found disproportionality in a case in which the defendant was found guilty for the death of more than one person, multiple aggravating circumstances were found to exist in only one case where the death sentence was found disproportionate, and the especially heinous, atrocious, or cruel

STATE v. COLE

[343 N.C. 399 (1996)]

aggravating circumstance has been found as the sole aggravating circumstance in many cases where the death sentence was found proportionate.

**Am Jur 2d, Criminal Law §§ 609, 627-629.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that in committing murder, defendant created risk of death or injury to more than one person, to many persons, and the like—post-*Gregg* cases. 64 ALR4th 837.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Beaty, J., at the 31 May 1994 Criminal Session of Superior Court, Camden County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment for involuntary manslaughter was allowed on 6 September 1995. Heard in the Supreme Court 13 March 1996.

*Michael F. Easley, Attorney General, by Ellen B. Scouten, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

Defendant, Wade Larry Cole, was indicted on 27 June 1988 for two counts of murder. He was tried capitally in July 1989, found guilty of one count of first-degree murder and another count of involuntary manslaughter, and sentenced to death and ten years' imprisonment. On appeal, we awarded defendant a new trial. *State v. Cole,* 331 N.C. 272, 415 S.E.2d 716 (1992). During defendant's second capital trial, the jury returned verdicts of guilty on one count of first-degree murder and guilty on one count of involuntary manslaughter. During a capital sentencing proceeding conducted pursuant to N.C.G.S. § 15A-2000, the jury recommended a sentence of death for the first-degree murder conviction. The jury found as aggravating circumstances that the murder was especially heinous, atrocious, or

cruel and that the murder was part of a course of conduct involving other crimes of violence against another person. The jury also found nine of the ten statutory and nonstatutory mitigating circumstances submitted to it. The trial judge imposed a sentence of two years' imprisonment for the involuntary manslaughter conviction and, in accordance with the jury recommendation, imposed a sentence of death for the first-degree murder conviction.

Defendant makes sixteen arguments on appeal to this Court. We reject each of these arguments and conclude that defendant's trial and capital sentencing proceeding were free of prejudicial error and that the death sentence is not disproportionate. Accordingly, we uphold defendant's convictions of first-degree murder and involuntary manslaughter as well as defendant's sentences of two years' imprisonment and death.

The State's evidence presented at trial tended to show the following facts and circumstances: Theresa Graham, thirty-two years old, lived in a house in Camden County with Hattie Graham (Ms. Graham), her fifty-seven-year-old mother; defendant; and defendant's and Theresa's two children, Rod and Assunta Graham, ages eleven and two, respectively. On 22 June 1988, William Bowser, Theresa's twelve-year-old cousin, was spending the night at the Graham residence. Defendant came home from work at around 5:30 p.m. on that evening. Upon entering the house, he asked where dinner was and then hit Theresa with his fist. Defendant then went outside, and Theresa followed him asking why he had hit her. Once outside, defendant began hitting Theresa again. Her mother followed and attempted to stop defendant from striking her daughter. Defendant then struck Ms. Graham, who fell and hit her head against the door of defendant's automobile. Rod and Bowser helped Ms. Graham into the house, and she called the police.

When Deputies Lilly and Vick of the Camden County Sheriff's Department arrived at the Graham residence, defendant and Theresa were arguing. Theresa had a black eye and a bruised face. Theresa remained with the children while the deputies transported defendant and Ms. Graham in separate vehicles to the magistrate's office. At the magistrate's office, a warrant was issued for defendant's arrest for the assault of Ms..Graham. Defendant posted bond and was released with instructions that he not return to the Graham residence except to retrieve his automobile. Police officers accompanied defendant back to the residence to retrieve his automobile and stayed until defendant left shortly before midnight.

At approximately 1:36 a.m. on 23 June 1988, a police dispatcher in Elizabeth City received a call from Ms. Graham, who sounded excited and out of breath. Ms. Graham stated that her daughter was on the front porch dead and that defendant had shot her. Ms. Graham also told the dispatcher that she had tried to stop the attack but that defendant had knocked her down. The dispatcher contacted Deputy Vick, who then contacted Ms. Graham. After talking to Ms. Graham, Deputy Vick returned to the Graham residence. On his way, the deputy radioed a description of defendant and his vehicle to other law enforcement officers.

When Deputy Vick arrived at the Graham residence, he found Theresa lying face-down on the floor of the screened porch and a knife lying on top of her neck; Theresa had no pulse. The three children then ran from the house. Deputy Vick entered the house and found Ms. Graham slumped over on the couch.

After other officers arrived, Deputy Vick took the children to the Sheriff's Department and interviewed them. Bowser stated that he was asleep on the couch when he heard a loud crash and saw defendant break through the back door. According to Bowser, defendant, armed with a .22-caliber rifle, snatched the telephone cord out of the wall, went to Theresa's bedroom, pulled Theresa from the bed, and shot her. Defendant kept beating Theresa as he dragged her into the dining room. Defendant then went into the kitchen, grabbed a knife, returned to the dining room, and began stabbing Theresa. At some point, Ms. Graham tried to intervene, and defendant stabbed her. Defendant then took Theresa onto the porch and resumed stabbing her. He eventually stopped; yelled, "I told you I was going to kill you"; then left the Graham residence. After defendant left, Bowser reconnected the phone, and Ms. Graham called the Sheriff. After talking to Deputy Vick on the telephone, Ms. Graham stopped breathing. Bowser and Rod went to Rod's room and hid under the bed until they heard Deputy Vick arrive at the residence.

At 3:23 a.m., an officer saw defendant's automobile, stopped defendant, and placed him under arrest. When approached by the officer, defendant asked, "Is she dead, man?" The officer smelled alcohol on defendant's breath, and it was apparent to him that defendant had been drinking.

The medical examiner determined that Theresa had received over one hundred stab wounds to her body, some of which were defensive wounds. Twenty-eight of the stab wounds had penetrated her internal

body cavity, and many of them could have been fatal. There was one incised knife wound to the heart, as well as knife wounds to her spleen, liver, lungs, kidneys, and small intestines. Theresa also suffered two gunshot wounds: one to the right front part of her cheek and one to her left leg. The wound to her cheek was not fatal, but the gun had been placed in close proximity to her face when it was fired.

Ms. Graham had a single stab wound that penetrated her right breast as well as a stab wound to her left arm. She also had scrapes and bruises on her chest and lips. The medical examiner determined that Ms. Graham had severe coronary atherosclerosis, or hardening of the arteries of the heart, indicating heart disease. The cause of death was cardiac arrhythmia, or abnormal heart rhythm precipitated by stress; severe coronary disease was a major factor of her death. The stress on her heart was caused by the receiving of blunt-force injuries caused by blows to her lips, chest, head, right breast, and left arm.

Defendant testified at trial. He stated that when he got off work on the evening of the killings, he consumed some wine and smoked a marijuana cigarette before returning home. He and Theresa fought because she told him to "kiss her a—" when he asked about dinner. After he was released for assaulting Ms. Graham, defendant purchased more wine. After drinking the alcohol, he called Theresa, and she sounded out of breath. Defendant testified that he heard the couch squeaking, and thinking she was having sex with a neighbor, he became angry. Defendant further testified that he then drove to the house, and when he walked up, he thought he heard Theresa breathing heavily, the couch or bed squeaking, and a male voice. Defendant went back to his truck, got his rifle, and returned to the house.

According to defendant, when he got to the house, he found Theresa in bed with Bowser, and he lost control. Defendant admitted shooting and stabbing Theresa but denied stabbing Ms. Graham. He testified that when he realized what he was doing, he stopped, threw down the knife, and drove to Elizabeth City where he slept for an hour. Defendant also denied that he said, "I told you I was going to kill you," after he stabbed Theresa.

Defendant's motion to dismiss both counts of murder, made at the close of all the evidence and renewed after the jury verdicts were announced, was denied by the trial court. The jury returned verdicts finding defendant guilty of the first-degree murder of Theresa Graham and of the involuntary manslaughter of Ms. Graham.

STATE v. COLE

[343 N.C. 399 (1996)]

[1] As his first argument, defendant contends that the trial judge erred by not allowing his trial counsel to withdraw from the case. Defense counsel filed a pretrial motion to withdraw on 23 May 1994, one week before the trial was to begin. The motion was denied. Defendant argues that the record shows that the criteria for withdrawal were amply satisfied and that his Sixth Amendment right to effective assistance of counsel, as guaranteed under the United States Constitution, was violated. We disagree that defendant's right to effective assistance of counsel was violated.

Attorneys Lennie Hughes and O.C. Abbott represented defendant in the first trial. They were appointed for his retrial. In the withdrawal motion, filed 23 May 1994, counsel described disputes that they had with defendant during their 19 and 20 May 1994 visits with him. According to his attorneys, defendant accused them of conspiring with prosecutors, alleged that they wanted to see him executed, and alleged that exhibits had been altered. During the last conference with defendant, he became violent, tore some pages from Hughes' tablet, ordered the attorneys out of the room, and threatened to fight them.

Judge James C. Davis heard the motion to withdraw, at which time counsel added that defendant was not cooperative. According to his attorneys, defendant had lost all confidence in them and did not believe they had his best interest at heart. Defense counsel also pointed out that two other attorneys had agreed to serve as counsel. When defendant was addressed by the court, he stated that counsel had not subpoenaed certain witnesses and that the evidence had been altered.

The trial court may permit counsel to withdraw where good cause is shown. N.C.G.S. § 15A-144 (1988). Assuming *arguendo* that defense counsel did show good cause for their removal, defendant has not shown that he received ineffective assistance of counsel. Our review of the transcript and record reveals that defense counsel zealously represented their client and that any disputes between counsel and defendant were resolved before trial. We find no indication that defendant refused to cooperate with his attorneys or that defendant's outburst a week prior to his capital trial adversely affected the representation of defendant by his attorneys at trial. Accordingly, we conclude that defendant's Sixth Amendment guarantee of effective assistance of counsel was not violated. *See State v. Robinson*, 330 N.C. 1, 12, 409 S.E.2d 288, 294 (1991) (denial of defense counsel's motion to withdraw where defendant failed to show prejudice).

[2] In his second argument, defendant contends that the trial court erred by denying his pretrial motions for a change of venue and subsequent motion for a mistrial. During pretrial motions, defendant moved for a change of venue, arguing primarily that because the county was so small and because publicity for the first trial had been so intense, defendant could not receive a fair trial. Defendant added, as an aside, that he believed that because so many potential black jurors in rural Camden County knew the victims, it would be difficult to select a jury with black members. He noted that there were no black jurors in defendant's first trial. Initially, the trial court ordered that the case be moved to Chowan County for logistical reasons but that the jurors be selected from Camden County. Subsequently, however, defendant's trial was ordered back to Camden County, again for logistical reasons.

We consider first the denial of defendant's motion for change of venue. In *State v. Yelverton*, 334 N.C. 532, 434 S.E.2d 183 (1993), this Court said:

> When "the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial," the trial court must either transfer the case to another county or order a special venire. N.C.G.S. § 15A-957 (1988). . . .

> The test for determining whether venue should be changed is whether "it is reasonably likely that prospective jurors would base their decision in the case upon pre-trial information rather than the evidence presented at trial and would be unable to remove from their minds any preconceived impressions they might have formed." *Id.* at 255, 307 S.E.2d at 347. The burden of proving the existence of a reasonable likelihood that he cannot receive a fair trial because of prejudice against him in the county in which he is to be tried rests upon the defendant. *State v. Madric*, 328 N.C. 223, 226, 400 S.E.2d 31, 33 (1991). . . . The determination of whether a defendant has carried his burden of showing that pre-trial publicity precluded him from receiving a fair trial rests within the trial court's sound discretion. *Madric*, 328 N.C. at 226, 400 S.E.2d at 33. The trial court has discretion, however, only in exercising its sound judgment as to the weight and credibility of the information before it, including evidence of such publicity and jurors' averments that they were ignorant of it or could be objective in spite of it. When the trial court concludes,

based upon its sound assessment of the information before it, that the defendant has made a sufficient showing of prejudice, it must grant defendant's motion as a matter of law. *See State v. Abbott,* 320 N.C. 475, 478, 358 S.E.2d 365, 368 (1987).

*Yelverton,* 334 N.C. at 539-40, 434 S.E.2d at 187.

In the instant case, defendant did not prove that there was a reasonable likelihood that he could not receive a fair trial because of prejudice against him in Camden County. Although defendant makes much mention of a potential imbalance of racial composition in the trial in his brief to this Court, the thrust of his argument to the trial court was that the size of the county and the amount of pretrial publicity would make it difficult for defendant to receive a fair trial. After review of the materials presented to the trial court, we conclude that the trial court did not abuse its discretion. Defendant's evidence consisted of newspaper articles on the first trial. These articles, which appear to be essentially factual in nature, were published almost four years prior to defendant's retrial. This Court has consistently held that where defendant shows only that the publicity surrounding his case consists of such factual, noninflammatory news stories, a trial court's denial of a change of venue is proper. *See, e.g., State v. Richardson,* 308 N.C. 470, 478, 302 S.E.2d 799, 804 (1983); *State v. Oliver,* 302 N.C. 28, 36-37, 274 S.E.2d 183, 189-90 (1981). Defendant also presented evidence that there were approximately 1,600 potential jurors left for the venire in his retrial. We conclude that this was certainly a sufficient number from which to select an impartial jury of twelve. Accordingly, defendant's motion for change of venue was properly denied.

[3] We now address the denial of defendant's motion for mistrial. Before defendant moved for a mistrial, sixteen black jurors were interviewed by the trial court. Thirteen knew defendant, the victims, or both. Nine of the thirteen who knew defendant or the victims were struck because of their familiarity with one or both victims or defendant, three were struck because of their views on the death penalty, and one was struck peremptorily. Of the three who did not know defendant or the victims, one was excused for opposition to the death penalty and the other two for health reasons. At this point, no black person had been seated on the jury or questioned by defendant. Defendant moved for a mistrial, arguing that there was a systematic exclusion of blacks from the jury and that a cross-section of the community was not being presented. The motion was denied by the trial

court. After the denial of the motion, three more black jurors were interviewed. Two of the prospective jurors knew defendant or the victims. One was excused peremptorily by the State, and the other two prospective jurors were excused peremptorily by defendant. The process resulted in a jury consisting of no black members.

On appeal, defendant contends that the failure to grant his motion for change of venue was prejudicial in that it resulted in the systematic exclusion of black jurors in violation of the Sixth Amendment to the United States Constitution. On this basis, defendant contends that the trial court erred by not granting his motion for mistrial. It is important to emphasize that defendant does not allege and the evidence does not show that the prosecutor excused jurors on the basis of race in violation of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). In the instant case, we are not convinced that defendant was entitled to a mistrial or that the denial of defendant's motion for change of venue resulted in a violation of the Sixth Amendment to the United States Constitution.

The Sixth Amendment to the United States Constitution prohibits the arbitrary exclusion of certain groups or classes of citizens from the jury in federal and state cases. Defendant concedes, however, that the United States Supreme Court has held that the fair cross-section requirement of the Sixth Amendment applies only to the selection of jury venires and panels and not to the selection of petit juries chosen from those panels or venires. *Taylor v. Louisiana*, 419 U.S. 522, 42 L. Ed. 2d 690 (1975). He also concedes that we have adhered to this position taken by the United States Supreme Court and have not extended the fair cross-section analysis to petit juries. *State v. Fullwood*, 323 N.C. 371, 382, 373 S.E.2d 518, 525 (1988), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). The exclusion of a cognizable group from the petit jury by challenges for cause and peremptory challenges is not a violation of the right to an impartial jury as guaranteed by the Sixth Amendment. *Lockhart v. McCree*, 476 U.S. 162, 173, 90 L. Ed. 2d 137, 147-48 (1986). As defendant further concedes in his brief, this Court has stated that a defendant does not have a right to a jury with a racial composition that mirrors that of the community or even to have one member of defendant's race on the jury. *State v. Matthews*, 295 N.C. 265, 245 S.E.2d 727 (1978), *cert. denied*, 439 U.S. 1128, 59 L. Ed. 2d 90 (1979).

Defendant contends that his claim is different and, therefore, is not governed by this precedent because the denial of the change of

venue excluded blacks as effectively and as systematically as if they had been struck for cause or peremptorily on the basis of race, or as if they had been excluded from the jury pool because of race in the selection of the pool. We disagree with defendant's contention. Black persons were struck from the jury for a variety of reasons ranging from health problems to views on the death penalty. As we stated earlier, there was no indication that any potential juror was struck peremptorily on the basis of race. Nor is there any indication that blacks were excluded from the jury venire.

Our decision in this case is informed by the Court's discussion of a somewhat similar argument made by the defendant in *State v. Elkerson*, 304 N.C. 658, 285 S.E.2d 784 (1982). In *Elkerson*, the defendant argued that more blacks should have been included in the venire because a disproportionate number of blacks would be removed from the jury because of their views on the death penalty. As in the instant case, defendant did not show that any discrimination on the basis of race had taken place in the drawing or selection of the jury panel. *Id.* at 664, 285 S.E.2d at 788. This Court found no error in Elkerson's trial. Like the defendant in *Elkerson*, defendant in the instant case is essentially arguing that he is entitled to have persons of his race serve on the jury that tries him. While this may be a desirable goal, the law does not require it. What the law requires is that there be no systematic exclusion of certain constitutionally cognizable groups from the venire and that no potential juror be excluded from the petit jury on account of race or gender. Defendant has not shown that he did not receive the treatment that the law requires. Accordingly, we conclude that the trial court did not err in denying defendant's motion for mistrial.

[4] As defendant's third argument, he contends that the trial court erred by refusing to excuse a juror who expressed bias against him. Defendant attempted to strike prospective juror Leslie Ethridge for cause. The trial judge denied defendant's request. Defendant asserts that it was clear during *voir dire* that Ethridge had formed the belief that defendant had committed the crime and, therefore, that the trial court erred by not excusing him. We disagree.

This Court has consistently held that where the fitness of a juror is arguable, "the granting of a challenge for cause rests in the sound discretion of the trial court." *State v. Cunningham*, 333 N.C. 744, 753, 429 S.E.2d 718, 723 (1993). In the instant case, the juror first responded that he thought defendant was guilty; however, after being

questioned by the trial court, he unambiguously responded that he could put aside his knowledge of the case, that his knowledge would not affect his ability to render a fair and impartial verdict, and that he could base his verdict on the evidence presented at trial. We conclude that the trial judge did not abuse his discretion by denying defendant's motion to strike Ethridge for cause.

**[5]** Defendant, in his fourth argument, contends that the trial court erred by denying his motion to dismiss the charge of involuntary manslaughter. The trial judge instructed the jury that it could find defendant guilty of involuntary manslaughter based on one of two theories: (1) an unlawful act not amounting to a felony, or (2) culpable negligence. At defendant's request, the trial judge also instructed the jury on foreseeability as a requirement to find proximate cause under the theory of culpable negligence. Defendant argues that there was insufficient evidence to support his conviction on the theory of culpable negligence because there was no evidence of foreseeability. The State argues that foreseeability is not an essential element of proximate cause. We disagree with the State's contention, but nonetheless find no error.

As we stated in *State v. Powell*, 336 N.C. 762, 446 S.E.2d 26 (1994):

"Proximate cause is a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed. Foreseeability is an essential element of proximate cause. This does not mean that the defendant must have foreseen the injury in the exact form in which it occurred, but that, in the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected."

*Id.* at 771-72, 446 S.E.2d at 31 (quoting *Williams v. Boulerice*, 268 N.C. 62, 68, 149 S.E.2d 590, 594 (1966)) (citations omitted). It was not necessary that defendant foresee that the victim, Ms. Graham, would die from the assault, just that he foresee that some serious injury might result. The evidence shows that Hattie Graham was a fifty-seven-year-old woman. Defendant had been dating her daughter for fifteen years, and they had been living under the same roof with Ms. Graham for many of those years. Defendant was well aware of the

victim's state of health. It is reasonable that defendant would have foreseen that two stab wounds to a woman of Ms. Graham's age and health would be injurious to her. Accordingly, we reject defendant's argument.

[6] By defendant's fifth argument, he contends that the trial court erred by prohibiting a defense expert from testifying about the range of defendant's possible blood-alcohol level at the time of the alleged offense. During the trial, defendant sought to introduce testimony of Dr. Brian Grover, an expert witness in the area of clinical psychology and substance abuse. Dr. Grover was to testify, *inter alia*, about the range of defendant's blood-alcohol level at the time of the alleged offenses. The trial court conducted *voir dire* of Dr. Grover after the State's objection to this testimony.

During *voir dire*, Dr. Grover testified that he had performed assessments of people's blood-alcohol level in the past and that he calculates the range of a person's blood-alcohol level, rather than the specific level of blood-alcohol content. His calculations account for any uncertainty about the amount of alcohol consumed. To make these calculations, he uses standard considerations such as the person's weight and rate of metabolism. In this case, in light of defendant's uncertainty about the type and bottle size of Wild Irish Rose that he consumed or the type or amount of any other alcoholic beverage he consumed, Dr. Grover calculated a range based on possible bottle sizes and types. He estimated that defendant's blood-alcohol level was between .13 and .37. He stated that he was fairly confident about this approximation.

After *voir dire*, the trial court sustained the State's objection and ruled that Dr. Grover could testify only about what defendant had told him about the amount, type, timing, and consumption of alcohol near the time of the alleged offenses, and how that consumption affected defendant's capacity to form the specific intent required for first-degree murder. The trial court found that there was too much uncertainty about defendant's blood-alcohol content and about the amount of alcohol defendant had consumed. Therefore, the court concluded that the approximation was too speculative. Defendant contends that the trial court's failure to allow Dr. Grover to testify about defendant's blood-alcohol level was erroneous.

This Court has stated that an expert witness' "[o]pinion testimony based on inadequate data should be excluded." *State v. Rogers*, 323 N.C. 658, 664, 374 S.E.2d 852, 856 (1989). Dr. Grover testified that he

STATE v. COLE

[343 N.C. 399 (1996)]

based his estimation of defendant's blood-alcohol level on information received from defendant and standard considerations such as defendant's weight. However, defendant testified that he did not know the quantity of liquor he consumed or the percentage of alcohol in the liquor. There was also uncertainty concerning defendant's actual weight at the time of the homicides. Furthermore, Dr. Grover used the average rate of metabolism in his calculations, rather than defendant's actual rate of metabolism. Dr. Grover admitted during *voir dire*, however, that the rate of metabolism might vary considerably among individuals. Accordingly, we conclude that there was an inadequate basis for Dr. Grover's opinion concerning defendant's blood-alcohol level and that the trial judge properly excluded this testimony. We, therefore, reject defendant's fifth argument.

[7] In his sixth argument, defendant contends that the trial court erred by not intervening *ex mero motu* to prevent the prosecutor from making grossly improper statements during closing arguments. Defendant argues that the prosecutor took unfair advantage of the trial court's ruling that excluded Dr. Grover's testimony concerning the range of defendant's blood-alcohol level and that it was improper for the State to speculate as to defendant's blood-alcohol level. During closing arguments, the prosecutor argued:

> Their last straw is this alcohol thing. That's it for them. They have conceded and admitted everything else in the face of overwhelming evidence. That's where they are. That's all they've got left. Don't let them fool you. Had he been drinking? Clearly from the testimony he had. Clearly had. Moderate odor of alcohol, officer said, strong odor of alcohol. Shouldn't he have been arrested for driving while impaired? Maybe. He'd blown an eight or nine? Maybe. He consumed some alcohol. The only way we know that is we've heard people talk about odors and we've heard him say how much he consumed.

Defendant did not object during the prosector's argument and now argues that the trial court should have intervened *ex mero motu*. This Court has stated that

> [c]ontrol of counsel's argument is largely left to the trial court's discretion. When a defendant does not object to an alleged improper jury argument, the trial judge is not required to intervene *ex mero motu* unless the argument is so grossly improper as to be a denial of due process.

*State v. Howell,* 335 N.C. 457, 471, 439 S.E.2d 116, 124 (1994) (citations omitted). We agree with defendant that the prosecutor's argument was speculative. There was no testimony regarding defendant's actual blood-alcohol level. Testimony at trial indicated that defendant had consumed alcoholic beverages on the day of the murder, but there was no certainty about the amount or type of alcoholic beverages consumed. Nevertheless, the prosecutor's argument was not so grossly improper that the trial court abused its discretion by not intervening *ex mero motu.*

[8] Defendant also contends that the trial judge erred by not intervening *ex mero motu* in another portion of the prosecutor's closing argument. In this portion, the prosecutor argued that the jury should discredit Dr. Grover's testimony. After examination of this portion of the prosecutor's argument, we conclude that it was not improper and, therefore, certainly was not so improper as to require the judge to intervene *ex mero motu.* As we stated in *State v. Solomon,* 340 N.C. 212, 456 S.E.2d 778, *cert. denied,* — U.S. —— , 133 L. Ed. 2d 438 (1995), "[a] prosecutor may properly argue to the jury that it should not believe a witness." *Id.* at 220, 456 S.E.2d at 784. Accordingly, defendant's sixth argument is rejected.

[9] As his seventh argument, defendant contends that the trial court committed plain error by permitting the State to elicit irrelevant and prejudicial testimony about defendant's brother, Prince Cole. Defendant called Captain W.O. Leary of the Elizabeth City Police Department as a character witness. On direct examination, Leary testified that he knew defendant and that he had been to defendant's home when defendant lived in Elizabeth City. Leary also testified that he knew defendant's mother and brother, who had lived with defendant in Elizabeth City. On cross-examination, the State elicited testimony that Leary knew defendant's brother, Prince, because he had arrested him on a number of occasions.

Defendant did not object to this line of questioning at trial and now asks this Court to order a new trial under the plain error rule. As we have stated previously,

> the plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused,"

or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the . . . mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.) (footnote omitted), *cert. denied,* 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)), *quoted in State v. Weathers,* 339 N.C. 441, 450, 451 S.E.2d 266, 271 (1994). This is not the exceptional case where, after reviewing the entire record, we can say that the claimed error is so fundamental that justice could not have been done. Accordingly, we reject defendant's seventh argument.

**[10]** Defendant contends in his eighth argument that the trial court erred by submitting as an aggravating circumstance that the capital murder was part of a violent course of conduct that included defendant's commission of another crime of violence against another person. Defendant first contends that there was insufficient evidence of the other crime of violence. Because we have already found that there was sufficient evidence of the other crime of violence against another, to wit, involuntary manslaughter with regard to Hattie Graham, we reject this contention. Defendant also contends that the assault on Hattie Graham was not part of a single course of conduct involving the capital murder. We disagree.

Submission of the course of conduct aggravating circumstance is proper when there is evidence that the victim's murder and other violent crimes were part of a pattern of intentional acts establishing that there existed in defendant's mind a plan, scheme, or design involving both the murder of the victim and other crimes of violence. *State v. Cummings,* 332 N.C. 487, 508, 422 S.E.2d 692, 704 (1992). "In determining whether to submit the course of conduct aggravating circumstance, the trial court must consider 'a number of factors, among them the temporal proximity of the events to one another, a recurrent *modus operandi,* and motivation by the same reasons.' " *State v. Lee,* 335 N.C. 244, 277, 439 S.E.2d 547, 564 (quoting *State v. Price,* 326 N.C. 56, 81, 388 S.E.2d 84, 98, *sentence vacated on other grounds,* 498 U.S. 802, 112 L. Ed. 2d 7 (1990)), *cert. denied,* — U.S. —, 130 L. Ed. 2d 162 (1994). "[T]he closer the incidents of violence are connected in time, the more likely that the acts are part of a plan, scheme, system, design or course of action." *Cummings,* 332 N.C. at 510, 422 S.E.2d at 705.

STATE v. COLE

[343 N.C. 399 (1996)]

In this case, the evidence was sufficient to warrant the submission of the course of conduct aggravating circumstance to the jury. The evidence showed that defendant engaged in a violent course of conduct by stabbing Ms. Graham when she attempted to intervene while defendant was stabbing her daughter. The stabbings took place very close in time. In fact, the assault on Ms. Graham actually occurred during the attack on Theresa. Further, defendant used the same *modus operandi* in that he stabbed them both with a knife. Indeed, defendant used the same knife that he used to kill Theresa to stab her mother. The evidence clearly establishes that the two crimes were committed as a part of a course of conduct in which defendant engaged and which included the commission by defendant of a crime of violence against another person. Thus, the trial court did not err in submitting this circumstance to the jury.

**[11]** By his ninth argument, defendant contends that the trial court's instructions defining the aggravating circumstance that the murder was part of a course of conduct involving defendant's commission of a crime of violence against another person were unduly vague. We have previously held that instructions similar to the instructions given in this case were not unconstitutionally vague. *See State v. Williams*, 305 N.C. 656, 684, 292 S.E.2d 243, 260, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982); *State v. Rook*, 304 N.C. 201, 224, 283 S.E.2d 732, 746 (1981); *State v. Barfield*, 298 N.C. 306, 353, 259 S.E.2d 510, 543 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). We conclude that the instruction in the instant case was not unconstitutionally vague or without definition. Accordingly, we reject defendant's ninth argument.

**[12]** In his tenth argument, defendant contends that the trial court erred by not giving a peremptory instruction on the nonstatutory mitigating circumstance that defendant is a person of good character in the community in which he lives. We conclude that the trial judge did give the instruction and, therefore, that the trial court did not err.

During the capital sentencing proceeding, defendant requested a peremptory instruction on the mitigating circumstance that defendant was a person of good character and reputation in the community in which he lived. Although the trial court initially declined to give a peremptory instruction, the court subsequently instructed the jury as follows: "Accordingly, however, as to this mitigating circumstance, I charge you that if one or more of you find the facts to be *and* all the evidence tends to show, that the defendant is a person of good char-

STATE v. COLE

[343 N.C. 399 (1996)]

acter and reputation in the community in which he lives, then you will answer yes to this mitigating circumstance." (Emphasis added.) Defendant contends that the instruction with the use of the word "and" instead of the word "as" increased defendant's burden of persuasion and was not a peremptory instruction. We conclude that the trial court did give defendant's requested peremptory instruction and that the use of the word "and" was a *lapsus linguae* and did not have a prejudicial effect on defendant. Accordingly, we reject defendant's tenth argument.

[13] In his eleventh argument, defendant contends that the trial court erred by limiting the causes of the mitigating circumstance of impaired capacity to certain specified causes that omitted other causes supported by the uncontradicted evidence. This Court has previously ruled that a trial judge's mention of only some of the evidence supporting a mitigating circumstance does not preclude jurors from considering other evidence that might support such a circumstance. *State v. Payne*, 337 N.C. 505, 526-27, 448 S.E.2d 93, 105 (1994), *cert. denied*, — U.S. —, 131 L. Ed. 2d 292 (1995). Accordingly, this argument is rejected.

PRESERVATION ISSUES

[14-17] Defendant also raises four additional arguments that he concedes have been previously decided contrary to his position by this Court: (1) the jury's determination that the murder was especially heinous, atrocious, or cruel was based on unconstitutionally vague instructions; (2) the trial court's instructions defining the burden of proof applicable to mitigating circumstances violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; (3) the trial court violated the Eighth and Fourteenth Amendments to the United States Constitution by allowing the jury to refuse to give effect to mitigating evidence if the jury deemed it did not have mitigating value; and (4) the trial court erred by allowing jurors not to give effect to mitigating circumstances found by the jurors.

Defendant raises these issues for the purpose of permitting this Court to re-examine its prior holdings and also for the purpose of preserving them for any possible further judicial review of this case. We have carefully considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Accordingly, we reject these arguments.

## PROPORTIONALITY REVIEW

[18] Having concluded that defendant's trial and separate capital sentencing proceeding were free of prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain: (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2) (Supp. 1995).

The jury found as aggravating circumstances that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9), and that the murder was part of a course of conduct in which defendant engaged which included the commission of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11). One or more of the jurors found two of the three statutory mitigating circumstances submitted: that the defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); and that the murder was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2). None of the jurors found the statutory mitigating circumstance that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct with the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(4). One or more of the jurors also found seven of the seven nonstatutory mitigating circumstances submitted. After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the two aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, — U.S. —, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316

STATE v. COLE

[343 N.C. 399 (1996)]

N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds* by *State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

We conclude that this case is not substantially similar to any of the cases in which the death penalty was found disproportionate. First, the defendant was convicted of killing two individuals. "We have remarked before, and it bears repeating, that this Court has never found disproportionality in a case in which the defendant was found guilty for the death of more than one victim." *State v. Price*, 326 N.C. at 96, 388 S.E.2d at 107.

Second, multiple aggravating circumstances were found to exist in only one case where we found the death sentence disproportionate. *State v. Young*, 312 N.C. 669, 325 S.E.2d 181. However, as we noted in *State v. Walls*, 342 N.C. 1, 463 S.E.2d 738 (1995), *cert. denied*, — U.S. —, — L. Ed. 2d —, 64 U.S.L.W. 3763 (1996):

This Court found it important, in determining the death penalty was disproportionate in *Young*, that the jury failed to find either the especially heinous, atrocious, or cruel aggravating circumstance, N.C.G.S. § 15A-2000(e)(9), or the course of conduct aggravating circumstance, N.C.G.S. § 15A-2000(e)(11). *Young*, 312 N.C. at 691, 325 S.E.2d at 194.

*Walls*, 324 N.C. at 71, 463 S.E.2d at 776. In the instant case, as with *Walls*, both the especially heinous, atrocious, or cruel and the course of conduct aggravating circumstances were found to exist by the jury.

It is also proper to compare this case to those where the death sentence was found proportionate. *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we have repeatedly stated that we review all of the cases in the pool when engaging in our statutory duty, it is worth noting again that "we will not undertake to discuss or cite all of those cases each time we carry out our duty." *Id.* It suffices to say here that we conclude the present case is similar to certain cases in which we have found the death sentence proportionate.

We note that the especially heinous, atrocious, or cruel aggravating circumstance has been found as the sole aggravating circumstance in many of the cases where we have found the sentence of

STATE v. COLE

[343 N.C. 399 (1996)]

death proportionate. *State v. Burr*, 341 N.C. 263, 461 S.E.2d 602 (1995), *cert. denied*, — U.S. —, 134 L. Ed. 2d 526 (1996); *State v. Spruill*, 338 N.C. 612, 452 S.E.2d 279 (1994), *cert. denied*, — U.S. —, 133 L. Ed. 2d 63 (1995); *State v. Syriani*, 333 N.C. 350, 428 S.E.2d 118, *cert. denied*, — U.S. —, 126 L. Ed. 2d 341 (1993); *State v. Huffstetler*, 312 N.C. 92, 322 S.E.2d 110 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985). Likewise, the aggravating circumstance was found in the instant case. As we stated in *Walls*, "[w]hile this fact is certainly not dispositive, it does serve as an indication that the sentence of death . . . is not disproportionate." *Walls*, 342 N.C. at 72, 463 S.E.2d at 777.

After comparing this case to other similar cases as to the crime and the defendant, we conclude that this case has the characteristics of first-degree murders for which we have previously upheld the death penalty as proportionate. *See, e.g., State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995); *State v. Gregory*, 340 N.C. 365, 459 S.E.2d 638 (1995), *cert. denied*, — U.S. —, 134 L. Ed. 2d 478 (1996); *State v. Ingle*, 336 N.C. 617, 445 S.E.2d 880 (1994), *cert. denied*, — U.S. — 131 L. Ed. 2d 222 (1995). All of these cases involved double murders where the jury found the aggravating circumstances that the murders were part of a course of conduct in which the defendant engaged and which included the commission of other crimes of violence against another person and that, as to at least one of the murders, it was especially heinous, atrocious, or cruel, and where this Court found the sentence of death proportionate. Accordingly, we cannot conclude that the death sentence in this case is excessive or disproportionate. Therefore, the judgments of the trial court must be and are left undisturbed.

NO ERROR.