IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-459

Filed 2 July 2025

Haywood County, Nos. 22CRS050635-430, 22CRS050637-430, 22CRS000332-430, 22CRS000333-430, 22CRS000334-430

STATE OF NORTH CAROLINA

v.

BRYAN SCOTT TADLOCK

Appeal by Defendant from Judgments entered 26 October 2023 by Judge Gary M. Gavenus in Haywood County Superior Court. Heard in the Court of Appeals 16 January 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Danielle M. Orait, for the State.*

*Phoebe W. Dee for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Bryan Scott Tadlock (Defendant) appeals from Judgments entered upon jury verdicts finding him guilty of First-Degree Kidnapping, two counts of Assault by Strangulation, Assault with a Deadly Weapon Inflicting Serious Injury, and First-Degree Forcible Rape. The Record before us, including evidence presented at trial, tends to reflect the following:

On 11 July 2022, Defendant was indicted for First-Degree Kidnapping, First-

Degree Forcible Rape, Assault with a Deadly Weapon with Intent to Kill or Inflict Serious Injury, two counts of Assault by Strangulation, and Attempted First-Degree Murder.

The matter came on for trial on 23 October 2023. At trial, the State's evidence tended to show Defendant and the victim, K.S., were married and lived together with K.S.'s teenaged daughter, T.S.[1] During the week of 13 March 2022, Defendant began acting "[v]ery distant and quiet." On the evening of 18 March 2022, K.S. picked Defendant up from work and the two arrived home at approximately 11:00 p.m. T.S. had left earlier in the day to stay with her biological father for the weekend. Once inside, Defendant began drinking. Due to Defendant's "demeanor", K.S. went to bed "as soon as [they] got home."

K.S. testified she woke up at "about 1:30 [a.m.]" when Defendant entered their bedroom screaming at her. When K.S. ignored Defendant, he left the room and went outside. Defendant returned a few minutes later with a loaded gun and pointed it at K.S. as she laid in bed. He told her to "[g]et up or I'm going to make you get up." K.S. complied and Defendant "held the gun against [her] head," demanding K.S. go get a necklace they had given to T.S. for her birthday. K.S. retrieved the necklace from the living room and brought it into the kitchen at Defendant's behest. Defendant told K.S. to get a hammer. When K.S. resisted, Defendant "grabbed [K.S.]

---

[1] We use initials to protect the privacy of the victim and her minor daughter.

by [her] hair and kind of dragged [her] . . . to go get the hammer." Defendant "pinned [K.S.'s head] down to the stove" and screamed for her to destroy the necklace. After Defendant forced the gun's barrel into the back of her throat, K.S. "started hitting the necklace with the hammer." The two began to fight, and Defendant "wrapped his hands around [K.S.'s] neck" from behind and "started choking [her] and just wouldn't stop." K.S. described a struggle between herself and Defendant, during which the two fell to the floor. Defendant continued to strangle K.S. with his hands. "At some point" Defendant set the gun down, and K.S. "threw it across the room." Defendant proceeded to use his arm around K.S.'s throat to strangle K.S. until she fell unconscious.

When K.S. regained consciousness, Defendant helped her off the floor. Defendant apologized to K.S., found painkillers for her, and helped her clean herself up. He alleged T.S. had made sexual advances toward him when the family watched a movie together in the week prior, and K.S. "had to be taught a lesson[.]"

Around 4:30 a.m., Defendant told K.S. she "needed to go get some rest and that he would sleep on the couch." K.S. asked Defendant to join her in bed instead, "[b]ecause if he's on the couch, [she] can't get to the door." When the pair laid down, Defendant initiated sex with K.S. K.S. testified, in the hope she "would live through what [she] thought [she] wasn't going to live through," she "did whatever [Defendant] wanted[.]" Eventually, Defendant fell asleep and K.S. "ran out" to go to the hospital.

At the close of the State's evidence, defense counsel moved to dismiss the

charges of Attempted First-Degree Murder, First-Degree Forcible Rape, Assault with

a Deadly Weapon with Intent to Kill, and First-Degree Kidnapping. Defense counsel

expressly chose not to challenge the two charges of Assault by Strangulation, stating:

"Now, with respect . . . to the assault by strangulation, I can't stand here in good faith

and ask the court to dismiss those." The trial court denied defense counsel's Motion.

Defense counsel renewed its Motion at the close of all evidence. The trial court, *sua*

*sponte*, requested both sides present arguments as to whether the evidence supported

two separate charges of Assault by Strangulation. For its part, defense counsel said

it would leave the issue in the trial court's discretion:

> [Defense Counsel]: Judge, the only thing, in both of the
> indictments, the language is talking about and/or, you know, how
> the assaults occurred. It could have been conceivably
> consolidated into one indictment. I can see how you break it
> down. I can see how you could have added an extra "and/or" and
> just consolidated into one indictment that way. But I'll just leave
> it in the court's discretion, Judge. I think you know more about
> this than I do. I'll leave it in the court's discretion about how you
> want to proceed on it.

The trial court denied defense counsel's Motion again, finding "sufficient evidence of

each and every element of each and every crime to submit to this jury."

Defense counsel also requested the trial court instruct the jury on the defense

of voluntary intoxication. The trial court denied this request. During closing

arguments, the prosecutor argued

> the thing about alcoholics is they can drink and they can drink
> and they can drink and they can drink. They can blow super high
> blood alcohol levels and still function. They can still know right

4

from wrong. They still know what they're doing. And how do you know that he knew what he was doing? "I'm sorry. I'm sorry. You're not going to call the cops, are you?" In those text messages, did you see any typos? When somebody's drunk and they're typing, there's usually some typos. None. This is methodical. It's thought out. It's planned. He knows exactly what he's doing. But the common excuse and the way to diminish the bad behavior is, "I was drunk. I'm sorry. You know I didn't mean it, honey. I just had too much to drink. I love you. I'm going to protect you. I'll never do it again." And a wife is going to hope and pray that that's true.

Defense counsel raised no objections.

On 26 October 2023, the jury returned verdicts finding Defendant guilty of First-Degree Kidnapping, both charges of Assault by Strangulation, Assault with a Deadly Weapon Inflicting Serious Injury, and First-Degree Forcible Rape. The jury found Defendant not guilty of Attempted First-Degree Murder. The trial court entered Judgments in accordance with the verdicts and sentenced Defendant to 73 to 100 months imprisonment for Kidnapping; 6 to 17 months imprisonment for each charge of Assault by Strangulation; 25 to 42 months imprisonment for Assault with a Deadly Weapon Inflicting Serious Injury; and 240 to 348 months imprisonment for First-Degree Forcible Rape. The trial court ordered all sentences to run consecutively. The trial court also ordered Defendant to register as a sex offender for his natural life and to pay a $25,000 fine. Defendant orally gave Notice of Appeal in open court.

## **Issues**

The issues on appeal are whether the trial court erred by: (I) refusing to

instruct the jury on the defense of voluntary intoxication; (II) denying Defendant's Motion to Dismiss one charge of Assault by Strangulation; (III) failing to distinguish between the injuries caused by each Assault by Strangulation; (IV) failing to intervene *ex mero motu* during the State's closing arguments; (V) assessing a $25,000 fine against Defendant at sentencing.

## Analysis

I.      Voluntary Intoxication Instruction

Defendant first argues the trial court erred in denying his request to instruct the jury on voluntary intoxication. Defendant contends he was entitled to a jury instruction on voluntary intoxication because the evidence, taken in the light most favorable to Defendant, tended to show he had been drinking for at least three hours, drank at least half of a fifth of whiskey, was behaving abnormally, broke a glass, was too impaired to have sex, ultimately passed out after assaulting K.S., and there were numerous bottles of alcohol in the part of the home where Defendant had been that evening. Thus, Defendant asserts, there was substantial evidence supporting the conclusion he could not form the specific intent to support his convictions for First-Degree Kidnapping and First-Degree Forcible Rape,[2] such that he was entitled to an instruction on voluntary intoxication.

---

[2] Defendant was charged with four specific-intent crimes—First-Degree Kidnapping, First-Degree Forcible Rape, Attempted First-Degree Murder, and Assault with a Deadly Weapon with Intent to Kill—but convicted only of First-Degree Kidnapping and First-Degree Forcible Rape.

"A trial court must give a requested instruction if it is a correct statement of the law and is supported by the evidence." *State v. Haywood*, 144 N.C. App. 223, 234, 550 S.E.2d 38, 45 (2001) (citing *State v. Rose*, 323 N.C. 455, 458, 373 S.E.2d 426, 428 (1988)). We review whether a defendant was entitled to a jury instruction on voluntary intoxication de novo to determine whether the evidence supported such an instruction when considered in the light most favorable to the defendant. *State v. Mercer*, 373 N.C. 459, 462, 838 S.E.2d 359, 362 (2020) (citing *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988)).

"In certain instances voluntary drunkenness, while not an excuse for a criminal act, may be sufficient to negate the requisite intent element. However, no inference of the absence of [specific intent] arises from intoxication, as a matter of law." *Mash*, 323 N.C. at 347, 372 S.E.2d at 537 (alteration, citations and quotation marks omitted). The burden is on the defendant to "produce substantial evidence which would support a conclusion by the judge that he was so intoxicated that he could not form" the requisite intent. *Id.* at 346, 372 S.E.2d at 536.

"Evidence of mere intoxication, however, is not enough to meet defendant's burden of production." *Id.* "The evidence must show that at the time of the [crime] the defendant's mind and reason were so completely intoxicated and overthrown as to render [her] utterly incapable of forming [specific intent]." *State v. Meader*, 377 N.C. 157, 162, 856 S.E.2d 533, 538 (alterations in original) (quoting *Mash*, 323 N.C. at 346, 372 S.E.2d at 536). Absent such evidence, a trial court is not required to

instruct the jury on voluntary intoxication. *Id.*

Although the Record indicates Defendant had been drinking for several hours before the incident in question, evidence of mere intoxication is insufficient to require a jury instruction on voluntary intoxication. *Mash*, 323 N.C. at 346, 372 S.E.2d at 536. We analyze whether a defendant was unable to form the requisite intent because of his intoxication based on his actions leading up to the incident. *Id.* In *Mash*, the defendant was charged with first-degree murder stemming from an assault on multiple people. *Id.* at 342-43, 372 S.E.2d at 534-35. There, the evidence presented at trial included testimony the defendant had been drinking alcohol for at least seven hours; "swerved" his car while driving to buy more alcohol; his eyes were dilated, and his eyes and face were red; he was "sweating"; and he had difficulty speaking and walking. *Id.* at 340-42, 372 S.E.2d at 533-34. The Court held this evidence was sufficient to warrant a voluntary intoxication instruction. *Id.* at 348, 372 S.E.2d at 538.

Here, there is not substantial evidence Defendant could not control himself or was so intoxicated he could not form the intent for First-Degree Kidnapping and First-Degree Forcible Rape. Unlike the defendant in *Mash*, there was no evidence Defendant had trouble speaking or walking. Also unlike in *Mash*, the Record does not indicate Defendant engaged in inexplicable behavior immediately prior to attacking K.S.; K.S. testified Defendant's demeanor and behavior had been "off" for an entire week leading up to the incident. Moreover, after the incident, Defendant

helped K.S. get up from the floor, helped clean her up, brought her pain medication, and apologized, saying, "I'm sorry you had to go through that, but I had to teach you a lesson." Indeed, Defendant's apology tends to indicate he appreciated the nature of his actions. Thus, although there was evidence Defendant was intoxicated, there was not substantial evidence—even taken in the light most favorable to Defendant— Defendant was intoxicated to the point he could not control himself and could not form the specific intent required to support the charges of First-Degree Kidnapping and First-Degree Forcible Rape. *See Meader*, 377 N.C. at 162, 856 S.E.2d at 538. Therefore, the trial court did not err by not instructing the jury as to Defendant's voluntary intoxication.

II.     Motion to Dismiss

Defendant argues the trial court erred by denying his Motion to Dismiss one of the charges of Assault by Strangulation. As a threshold matter, we note Defendant did not actually make a motion to dismiss either charge of Assault by Strangulation. Rather, defense counsel moved to dismiss all charges *except* the two charges of Assault by Strangulation. Neither party has addressed preservation of this issue on appeal.

"In a criminal case, a defendant may not make insufficiency of the evidence to prove the crime charged the basis of an issue presented on appeal unless a motion to dismiss the action . . . is made at trial." N.C.R. App. P. 10(a)(3) (2024). Our Supreme Court has held a timely motion to dismiss "preserves all issues related to

the sufficiency of the evidence for appellate review[,]" regardless if the defendant stated the grounds for his motion. *See State v. Golder*, 374 N.C. 238, 249, 839 S.E.2d 782, 790 (2020). Here, by contrast, rather than failing to state upon what grounds he was moving to dismiss the charges of Assault by Strangulation, defense counsel expressly excluded the charges of Assault by Strangulation from his Motion to Dismiss.

The trial court, however, raised the issue of whether the evidence was sufficient to support two charges of Assault by Strangulation. At that point, defense counsel argued the charges could have been "consolidated into one indictment." After hearing arguments from the State and defense counsel, the trial court found there was sufficient evidence "of each and every element of each and every crime[,]" such that both charges of Assault by Strangulation should be submitted to the jury.

Although the issue was raised by the trial court—rather than defense counsel—it was ultimately addressed by both the State and defense counsel during arguments on Defendant's Motion to Dismiss and treated as a motion to dismiss one of the charges of Assault by Strangulation. Moreover, the State has not argued the issue is not preserved for our review. Thus, we will address Defendant's arguments as to the sufficiency of the evidence for the charges of Assault by Strangulation on appeal. *Cf. Golder*, 374 N.C. at 246, 839 S.E.2d at 788 ("[U]nder Rule 10(a)(3) and our case law, defendant's simple act of moving to dismiss at the proper time preserved all issues related to the sufficiency of the evidence for appellate review.").

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion [to dismiss] should be allowed." *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455 (citation omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). However, "[w]hether the State has offered such substantial evidence is a question of law for the trial court." *State v. McKinney*, 288 N.C. 113, 119, 215 S.E.2d 578, 583 (1975) (citations omitted).

"[A]ny person who assaults another person and inflicts physical injury by

11

strangulation is guilty of" assault by strangulation. N.C. Gen. Stat. § 14-32.4(b) (2023). Thus, one of the offense's essential elements is an assault. *Id.* Our Supreme Court has explained, in cases of assault, not every overt act will count as a separate offense; rather, this Court "must look beyond the number of physical contacts with the victim to determine whether more than one assault has occurred such that the State can appropriately charge a defendant with multiple assaults." *State v. Dew*, 379 N.C. 64, 70-71, 864 S.E.2d 268, 274 (2021). In *Dew*, our Supreme Court held "the State may charge a defendant with multiple counts of assault only when there is substantial evidence that a distinct interruption occurred between assaults." *Id.* at 72, 864 S.E.2d at 275. A distinct interruption "may take the form of an intervening event, a lapse of time in which a reasonable person could calm down, an interruption in the momentum of the attack, a change in location, or some other clear break delineating the end of one assault and the beginning of another." *Id.*

The victim in *Dew* described a "continuous, nonstop beating" where the defendant "hit her 'over and over,' " which took place in a trailer home while they were away visiting family. *Id.* at 65, 864 S.E.2d at 270. The victim testified, after that assault, she cleaned up the trailer, packed their bags, and got in a car with the defendant to drive home. *Id.* at 66, 864 S.E.2d at 271. The defendant beat the victim again during the "entire car ride" home. *Id.* The defendant was charged with five discrete assault charges and convicted of three. *Id.* at 69, 864 S.E.2d at 273. On appeal, the defendant argued there was insufficient evidence to support all but one

charge of assault. *Id.* at 68, 864 S.E.2d at 272. Our Supreme Court held there was sufficient evidence to support two of the assault charges—one assault in the trailer and one assault in the car. *Id.* at 73-743, 864 S.E.2d at 276. The Court explained: "The process of cleaning up and packing up was an intervening event interrupting the momentum of the attack. In addition, the beating in the trailer was distinct in time and location from the beating in the car." *Id.* at 74. In concluding there was insufficient evidence to support the third assault charge, which stemmed from the attack in the trailer, the Court noted "different injuries or different methods of attack standing alone are insufficient evidence of a distinct interruption" and "all of the evidence" including the victim's testimony, "indicated that it was an ongoing, continuous attack." *Id.*

The Supreme Court revisited this principle in *State v. Robinson*, 381 N.C. 207, 872 S.E.2d 28 (2022). In concluding there was insufficient evidence of a distinct interruption to support multiple charges of assault, the Court observed the evidence presented "a confined and continuous attack in which defendant choked and punched [the victim] in rapid succession and without pause or interruption." *Id.* at 219, 872 S.E.2d at 37. However, the Court acknowledged "one can *imagine* a distinct interruption being described here with additional facts." *Id.* (emphasis in original). "For instance, if the facts indicated that the attack began in the bathroom but then moved to the bedroom, such a change in location may constitute a distinct interruption." *Id.* Likewise, evidence of a "discernable sequence of events" could

show a distinct interruption in an attack. *Id*.

Here, the evidence "as it was presented" provides sufficient evidence from which the jury could have found a distinct interruption. *See id.* Unlike in *Dew* and *Robinson*, K.S. testified to a discernable sequence of events, rather than a "confined and continuous attack[.]" *See id.* At trial, K.S. testified Defendant first choked her from behind with his hands. She then described fighting Defendant, turning her body to face towards him, moving across the kitchen "from the stove" to "in front of the refrigerator." K.S. explained Defendant then hit her multiple times with the gun before she fell to the floor; next, she was able to throw the gun across the room, and Defendant strangled her again, now using his arm around her throat. This testimony tends to show not only a discernable sequence of events, but also evidence of a change in location, from the across the kitchen and from standing to lying on the floor—in addition to the different methods of attack, i.e., Defendant's use of his hands to strangle K.S. versus his arm.

Thus, the State's evidence was more than "different injuries or different methods of attack standing alone[.]" *Dew*, 379 N.C. at 74, 864 S.E.2d at 276. Therefore, viewed in the light most favorable to the State, there was sufficient evidence from which the jury could find a distinct interruption between Defendant's strangulation of K.S. with his hands and his strangulation of K.S. with his arm. Consequently, the trial court properly denied Defendant's Motion to Dismiss.

III.   Physical Injuries

Defendant contends the trial court plainly erred by "failing to distinguish the injuries caused" by each charge of Assault by Strangulation. Specifically, Defendant argues neither the indictments, jury instructions, nor jury verdict sheets "specified what injury was associated with each of" the two charges of Assault by Strangulation.

At trial, Defendant did not object to the trial court's jury instructions. Thus, he is limited to arguing plain error. N.C.R. App. P. 10(a)(4) (2024) ("In criminal cases, an issue that was not preserved by objection noted at trial . . . may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error."); *see also State v. Bowman*, 292 N.C. App. 290, 898 S.E.2d 27 (2024) (reviewing for plain error).

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 224 (2012) (citation omitted). Further, "[t]o show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's findings that the defendant was guilty.' " *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted)). In other words, plain error requires a defendant to meet a three-factor test:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error

15

review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (citations and quotation marks omitted).

In addition to an assault, Assault by Strangulation requires the infliction of a "physical injury." *See* N.C. Gen. Stat. § 14-32.4(b) (2023). Defendant argues because "none of the injuries were tied specifically to either strangulation," his "right to a unanimous verdict was jeopardized[.]" In so arguing, Defendant relies on *Bowman* and *State v. Bates*, 172 N.C. App. 27, 616 S.E.2d 280 (2005).

It is worth noting this Court's decision in *Bates*, cited by Defendant, was remanded by our Supreme Court for reconsideration in light of *State v. Lawrence*, 360 N.C. 368, 627 S.E.2d 609 (2006). *See State v. Bates*, 360 N.C. 537, 634 S.E.2d 218 (2006). On remand—contrary to its original decision—this Court held the defendant's right to a unanimous verdict was *not* violated. *See State v. Bates*, 179 N.C. App. 628, 634, 634 S.E.2d 919, 923 (2006), *disc. rev. denied*, 361 N.C. 696, 653 S.E.2d 2 (2007). In so holding, the Court considered four factors: "(1) the evidence; (2) the indictments; (3) the jury charge; and (4) the verdict sheets." *Id.* at 633, 634 S.E.2d at 922.

> Concerning the evidence and indictments, we looked to determine whether "it is possible" to match guilty verdicts with specific incidents. Concerning the jury instructions, we looked to whether the "instructions were adequate to ensure that the jury understood that it must agree unanimously as to each verdict on each charge." And concerning the verdict sheets, we looked to whether "the presentation of the charges on the verdict sheets was adequate for the jury to distinguish the charges based on the

16

evidence presented at trial."

*Bowman*, 292 N.C. App. at 294, 898 S.E.2d at 31 (internal citations omitted) (quoting *Bates*, 179 N.C. App. at 633-34, 634 S.E.2d at 922-23).

As to the evidence and indictments, the Court observed the defendant was charged with eleven counts of first-degree sexual offense, but evidence was presented of "only six to ten incidents." *Bates*, 179 N.C. App. at 633, 634 S.E.2d at 922 (noting the Courts in *Lawrence* and *State v. Wiggins*, 161 N.C. App. 583, 589 S.E.2d 402 (2003), *disc. rev. denied*, 358 N.C. 241, 594 S.E.2d 34 (2004) "found no unanimity problem" where the number of counts equaled the number of incidents presented as evidence). Nonetheless, it was not "impossible to match the jury verdict to the evidence." *Id*. As to the jury instructions, the trial court instructed the jury separately as to each count and instructed the jurors they must reach a unanimous verdict. *Id*. Lastly, as to the verdict sheets, although the case numbers were not provided on the sheets, each charge was listed separately with a notation of the felony charged, had "date ranges for the different counts to differentiate the charges for the jury[,]" and some of the counts had descriptors next to the charges, "reducing the risk that the jurors considered different incidents in reaching their verdict and increasing the likelihood of unanimity." *Id.* at 634, 634 S.E.2d at 922-23. Thus, the Court concluded "it [was] possible to match the jury's verdict of guilty with specific incidents presented in evidence and in the trial court's instructions." *Id*. at 634, 634 S.E.2d at 923.

17

More recently, in *Bowman*, this Court considered these factors in concluding the trial court plainly erred in instructing the jury only once where the defendant was charged with two counts of first-degree sexual offense. 292 N.C. App. at 294, 898 S.E.2d at 31. While the trial court "advised the jury that its verdict must be unanimous as to each charge," the Court was particularly concerned the verdict sheet "did not specify which sexual act was to be considered for each charge." *Id.* Thus, it was "impossible to know if the jury convicted Defendant of the *particular* offense[s] charged in the warrant or bill of indictment." *Id.* at 295, 898 S.E.2d at 32 (emphasis and alteration in original) (citation and quotation marks omitted). Consequently, the trial court's failure to "differentiate counts by the type of alleged sexual act" jeopardized the defendant's right to a unanimous verdict. *Id.*

Here, as in *Bates*, the number of counts equals the number of incidents presented in evidence. Likewise, there were two indictments for Assault by Strangulation. *See Bates*, 179 N.C. App. at 633, 634 S.E.2d at 922 ("Where the number of incidents equal the number of indictments, the risk of a non-unanimous verdict is substantially lower."). The trial court instructed the jury twice—once for each charge of Assault by Strangulation. And like in *Bates*, the trial court instructed the jurors they could not reach a verdict by majority vote. Lastly, the verdict sheets presented each charge separately and identified the felony charged by name and case number. Unlike in *Bowman*, the sheets further differentiated each offense by including the words "alleged by hands" or "alleged by arm" in bold font.

18

Moreover, the State published to the jury a series of photographs taken of K.S.'s injuries. *See State v. Little*, 188 N.C. App. 152, 157, 654 S.E.2d 760, 764 (2008) (photographs showing bruises on victim's neck were sufficient evidence of physical injury for assault by strangulation). K.S. identified swelling, bruising, and marks on her throat that were not there prior to Defendant's assault. She also used her hands to illustrate to the jury where Defendant had placed his hands on her neck. Doctor Jan Feltowicz, who treated K.S. while she was at the hospital, testified K.S. had "abrasions" on her neck and "spasm in the upper neck, which is consistent with . . . being assaulted and strangled." Thus, we cannot agree with Defendant that "there was ambiguity in what evidence the jury should consider regarding the physical injury caused [by] each instance of alleged strangulation[.]" Therefore, the trial court did not err by not distinguishing the physical injuries for the jury.

IV.    Closing Arguments

Defendant contends the prosecutor's remarks regarding alcoholics in her closing argument constituted gross impropriety, making it an error for the trial court to fail to intervene *ex mero motu*. Because defense counsel did not object to the prosecutor's statements at trial, our review is conducted under a heightened standard:

> The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*. In other words, the reviewing court must determine

> whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted). In conducting this review, we must analyze "(1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial." *State v. Huey*, 370 N.C. 174, 179, 804 S.E.2d 464, 469 (2017).

"Grossly improper" is an "exceedingly high bar." *Reber*, 386 N.C. at 163, 900 S.E.2d at 789. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144, 157 (1986) (citation and quotation marks omitted). "In order to determine whether the prosecutor's remarks are grossly improper, the remarks must be viewed in context and in light of the overall factual circumstances to which they refer." *State v. Alston*, 341 N.C. 198, 239, 461 S.E.2d 687, 709 (1995) (citation omitted).

Further, even when an argument is deemed so improper, the defendant has the burden of demonstrating prejudice. *See Huey*, 370 N.C. at 186, 804 S.E.2d at 474. Additionally, when the Supreme Court of North Carolina "has found the existence of overwhelming evidence against a defendant, [it has] not found statements that are

20

improper to amount to prejudice and reversible error." *Id.* at 181, 804 S.E.2d at 470.

"During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice." N.C. Gen. Stat. § 15A-1230(a) (2023). Here, the prosecutor made several statements about alcoholism in her closing argument, including that alcoholics can "still function" and "know right from wrong" with a high blood alcohol level. Defendant argues the prosecutor, in making these statements, impermissibly argued facts not in evidence and inserted her unsupported opinion about how alcohol affected—or did not affect—Defendant's behavior. Presuming, without deciding, the prosecutor's statements and argument thereon was improper, Defendant cannot show the argument was so grossly improper, in light of the full context and the evidence presented against Defendant, that his "right to a fair trial was prejudiced by the trial court's failure to intervene." *Huey*, 370 N.C. at 180, 804 S.E.2d at 469-70 (citing *Jones*, 355 N.C. at 133, 558 S.E.2d at 107).

In *State v. Cole*, 343 N.C. 399, 471 S.E.2d 362 (1996), the defendant was convicted of first-degree murder and involuntary manslaughter. Testimony given at trial indicated the defendant had been drinking at the time of the killings. *Id.* at 419, 471 S.E.2d at 372. However, the defendant testified he did not know how much he had to drink on the night in question and no evidence was admitted as to his blood

alcohol level. *Id.* at 418-19, 471 S.E.2d at 371-72. During closing arguments, the

prosecutor made speculative statements about the defendant's level of intoxication:

> Their last straw is this alcohol thing. That's it for them. They
> have conceded and admitted everything else in the face of
> overwhelming evidence. That's where they are. That's all they've
> got left. Don't let them fool you. Had he been drinking? Clearly
> from the testimony he had. Clearly had. Moderate odor of
> alcohol, officer said, strong odor of alcohol. Shouldn't he have
> been arrested for driving while impaired? Maybe. He'd blown an
> eight or nine? Maybe. He consumed some alcohol. The only way
> we know that is we've heard people talk about odors and we've
> heard him say how much he consumed.

*Id.* at 418, 471 S.E.2d at 371. Our Supreme Court agreed with the defendant the

argument was improper because it was speculative, but nonetheless held it was "not

so grossly improper that the trial court abused its discretion by not intervening *ex

mero motu.*" *Id.* at 419, 471 S.E.2d at 372.

Here, as in *Cole*, the prosecutor's statements were, at most, inappropriately

speculative. Moreover, for the reasons explained regarding Defendant's request for

a voluntary intoxication instruction, *supra*, there was not substantial evidence

Defendant could not control himself or was so intoxicated he could not form the

specific intent required to convict him. Indeed, the prosecutor's statements, viewed

in full context, were used to highlight a lack of "typos" in text messages Defendant

sent after the incident in question—rather than to indicate Defendant was a

functioning alcoholic. Thus, we cannot agree the prosecutor's comments were

prejudicial. Therefore, Defendant has not established the State's closing argument

was so grossly improper the trial court was required to intervene *ex mero motu*. Consequently, the trial court did not plainly err by not intervening in the State's closing argument.

V.     Sentencing

Lastly, Defendant argues the trial court erred by imposing a $25,000 fine on him at sentencing. We review sentencing decisions for abuse of discretion. *State v. Pope*, 257 N.C. 326, 335, 126 S.E.2d 126, 133 (1962) ("A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play."). To show an abuse of discretion, the defendant "must demonstrate that the trial court's action was so arbitrary that it could not have been the result of a reasoned decision." *State v. Cannon*, 341 N.C. 79, 87, 459 S.E.2d 238, 243 (1995) (citation and quotation marks omitted).

Under N.C. Gen. Stat. § 15A-1361, "[a] person who has been convicted of a criminal offense may be ordered to pay a fine as provided by law." As to felony sentencing, "the amount of the fine is in the discretion of the court." *Id.* § 15A-1340.17(b) (2023). "In exercising its discretion, the trial court must take into account the nature of the crime, the level of the offense, and the aggravating and mitigating factors, just as it would in setting the length of imprisonment for a defendant." *State v. Sanford Video & News, Inc.*, 146 N.C. App. 554, 557, 553 S.E.2d 217, 218 (2001),

*disc. rev. denied*, 355 N.C. 221, 560 S.E.2d 359 (2002).

Defendant argues he has no ability to pay the fine and will likely never be able to pay the fine. He argues the trial court did not take his financial situation into consideration when it imposed the fine, as required by statute. Defendant cites *State v. Mucci*, 163 N.C. App. 615, 594 S.E.2d 411 (2004) in support of his argument. There, the Court remanded the case for a new sentencing hearing in part because the trial court did not consider the statutory factors outlined in N.C. Gen. Stat. § 15A-1340.36. *Id.* at 627-28, 594 S.E.2d at 419-20. Section 15A-1340.36, however, is concerned with payment of restitution. Here, by contrast, Defendant was ordered to pay a fine—and the statutory obligations of Section 15A-1340.36 do not apply to the trial court's assessment of a fine. *See* N.C. Gen. Stat. § 15A-1340.36 (2023).

Defendant also argues the trial court's assessment of the fine was unreasonable under N.C. Gen. Stat. § 15A-1362(a), which provides: "In determining the method of payment of a fine, the court should consider the burden that payment will impose in view of the financial resources of the defendant." This argument was expressly rejected by this Court in *State v. Zubiena*:

> We are also unpersuaded by Defendant's argument that the trial court erred by failing to consider her resources when it imposed the fine. The statute Defendant cites for this proposition, N.C. Gen. Stat. § 15A-1362, states that "[i]n determining the *method of payment* of a fine, the court should consider the burden that payment will impose in view of the financial resources of the defendant." N.C. Gen. Stat. § 15A-1362(a) (2015) (emphasis added). As its plain language indicates, this statute relates to the method of payment of the fine rather than its amount.

STATE V. TADLOCK

*Opinion of the Court*

251 N.C. App. 477, 489, 796 S.E.2d 40, 49 (2016). It is the same here. We are unable to identify any basis for determining the trial court's imposition of the $25,000 fine against Defendant constituted an abuse of discretion or was otherwise unlawful— particularly in light of the nature of the crimes of which Defendant was convicted. *See Sanford Video & News, Inc.*, 146 N.C. App. at 557, 553 S.E.2d at 218. Thus, Defendant has not shown the trial court abused its discretion in assessing a $25,000 fine against him. Therefore, the trial court did not err in ordering Defendant to pay a $25,000 fine.

## Conclusion

Accordingly, for the foregoing reasons, we conclude there was no error at trial and affirm the Judgments of the trial court.


NO ERROR.

Judge GORE concurs.

Judge FREEMAN concurs in part and dissents in part by separate opinion.

FREEMAN, Judge, concurring in part and dissenting in part.

I concur in full with the majority opinion with the sole exception of its conclusion that there was substantial evidence of two separate assaults to survive defendant's motion to dismiss one of the two assault by strangulation charges.

This case requires us to determine whether the trial court properly determined there was substantial evidence of a distinct interruption in the overall assault to support two separate assault by strangulation charges. Prior to a recent decision from our Supreme Court in *State v. Dew*, 379 N.C. 64 (2021), this Court issued conflicting opinions on how to determine whether a distinct interruption occurred. Under one analytical framework, this Court looked for "evidence of a clear and significant break or demarcation within the assaultive episode." *State v. Robinson*, 381 N.C. 207, 217 (2022) (citing *State v. McPhaul*, 256 N.C. App. 303, 317–18 (2017)). Under the other framework, however, this Court used the factors set out in *State v. Rambert*, 341 N.C. 173 (1995), to determine whether (1) the defendant employed a separate thought process before each act, (2) each act was distinct in time, and (3) each act resulted in a discrete, identifiable injury. *E.g.*, *State v. Dew*, 270 N.C. App. 458, 462–63 (2020).

Here, defendant choked the victim with his hands until she broke free. Subsequently, the victim "went from the stove across the kitchen," ending up by the refrigerator. Defendant then hit her on the head with a gun, causing her to drop to the floor, where defendant continued attacking the victim. Defendant choked her

again with one hand while he pressed the gun to her head with the other. The victim then grabbed the gun and tossed it away. Defendant then choked her for a third time: he used his bodyweight to press his arm into her throat until she became unconscious. When she regained consciousness, defendant "helped [her] off the floor, and he walked [her] over to the chair at his computer desk and sat [her] down."

The State argues that there was a distinct interruption to support separate assault by strangulation charges because there was enough time for defendant for "form separate thought processes. There was a break in time, and a separate assault with the firearm separating" the different strangulations. Indeed, under the *Rambert* factors, this is enough to support a distinct interruption. Defendant first decided to strangle the victim; then he decided to hit the victim over the head with the gun after she broke free from the first chokehold; and once the gun was out of his control, he decided to choke the victim again with his arm.

However, our Supreme Court did away with the *Rambert* framework for determining whether there was a distinct interruption between assaults in *State v. Dew*. There, the Court held that "the State may charge a defendant with multiple counts of assault only when there is substantial evidence that a distinct interruption occurred between assaults." 379 N.C. at 72. The Court elaborated that appropriate factors to consider are "an intervening event, a lapse of time in which a reasonable person could calm down, an interruption in the momentum of the attack, a change in location, or some other clear break delineating the end of one assault and the

beginning of another." *Id.* Additionally, "different injuries or different methods of attack standing alone are insufficient evidence of a distinct interruption." *Id.* at 74.

This rule was carried forward in a more recent Supreme Court case, where the Court emphasized that when the facts show "a confined and continuous attack" of hitting and choking, there must be a "clear break delineating the end of one assault and the beginning of another." *Robinson*, 381 N.C. at 219.

In *Dew*, for example, there was single assault when the defendant hit the victim in a "continuous, non-stop beating for at least two hours" at their shared trailer, where the defendant "hit her upside the head and ear, on each side, kicked her in the chest, hit her nose and her ear puncher her in the nose, headbutted her twice, and strangled her until vomiting." 379 N.C. at 65, 73. The victim then cleaned up their trailer and put luggage in their car, while the defendant put his daughter in car seat in the backseat of the car. *Id.* at 73–74. Once they were in the car, the beating began again for another two hours. *Id.* at 74. The Court held that this was "substantial evidence of a distinct interruption between the occurrences in the trailer and those in the car." *Id.* However, it held that the assault in the trailer was one continuous assault, and the assault in the car was a second continuous assault. *Id.*

In *Robinson*, the defendant assaulted the victim while holding her captive in their shared home for three days. 381 N.C. at 219. However, the Court concluded that this was one continuous assault with no clear break in the violence. *Id.* The defendant "grabbed the victim around the neck, punched her several times in the face

- 3 -

and chest, and strangled her while holding her down on a bed." *Id.* at 208. Had there been something like a change in location, or multiple attacks over the course of the three-day captivity, there would have been a distinct interruption to support multiple assault convictions. *Id.* at 219. But because no such evidence existed, the Court held that this was one continuous assault. *Id.*

Since *Dew* and *Robinson*, this Court has held there was substantial evidence of a distinct interruption to support multiple assault charges where there was a five-hour long break between the assaults and the assaults occurred in different parts of the house. *State v. Martin*, 292 N.C. App. 505, 508–09 (2024). In *Martin*, the defendant choked the victim "at least twice" in a single assaultive episode where "he got on top of her, wrapped his hand around her neck, and choked her." *Id.* at 508. The victim tried to fight back, and subsequently the defendant choked her until she became unconscious. *Id.* at 509. However, the defendant was only charged with a single count of assault by strangulation. *Id.* at 507.

In another case, we held there was substantial evidence of a distinct interruption where the defendant choked the victim, left the room and attacked another person, then quickly returned to choke the first victim again. *State v. Tucker*, 291 N.C. App. 379, 389–90 (2023).

There is no such interruption in the present case. The three strangulations happened in short succession, in the same room, and while defendant was exclusively focused on attacking the victim. Though defendant used different methods of attack

and had time to form a separate thought process before choking the victim again, there is no clear break in the action to definitively show where one assault ended and the other began. Even in the light most favorable to the State, there is not substantial evidence of a distinct interruption to support two separate assault by strangulation charges.

I agree with the majority that the victim's testimony showed a discernable sequence of events; however, that is not the test. Cases like *Dew* and *Martin* illustrate that there can be a discernable sequence of events—and even multiple strangulations—within a single assault. And so too here. While there is evidence of defendant's distinct actions within the assault, the only apparent distinct interruption occurred when the victim fell unconscious after defendant choked her for the third time. Therefore, I would hold that the trial court erred in denying defendant's motion to dismiss one of the two assault by strangulation charges.